GEORGIE BERENICE PARKER, Appellant, v. CARLOS WINSLOW PARKER, Appellee.

No. 41193.

1328

Petition for Rehearing Dismissed by Petitioner September 27, 1932.

Chas. W. Bowers and Leo J. Lucier, for appellant.

T. P. Eslick and Leslie E. Francis, for appellee.

Evans, J.—On September 4, 1930, the plaintiff obtained a decree of divorce from the defendant-husband. All questions of alimony or distribution of property were settled by a stipulation signed by the parties and incorporated in the decree as a part thereof. Among other provisions, such stipulation in the decree included the following:

"Whereas the plaintiff above named has begun an action by serving notice for a divorce in the above entitled court against the defendant, and,

"Whereas in the event a divorce is granted in said cause, the parties agree to settle their property rights and other matters arising between them and are entering into this stipulation for that purpose, and

"Whereas, the West 40 feet of Lot 9 Summit Ridge Addition to the City of Des Moines belongs to the parties, also a cottage near Spirit Lake, Iowa, situated on the N.E.¼ of Sec. 9 Twp. 100, Range 36 West in Dickinson County, Iowa, and the contents thereof.

"It is stipulated and agreed by and between the parties that the said Georgie Berenice Parker shall be vested with the title by the decree to said West 40 feet of Lot 9 in Summit Ridge Addition to the City of Des Moines, Iowa, subject to all future payments thereon and all future taxes which shall be

paid by the plaintiff, Georgie Berenice Parker, *and it is agreed that payments now past due upon said property shall be paid out of funds to be provided by the corporation in which plaintiff and defendant are interested, known as the C. W. Parker Company, Inc.,* and the interest of each party in the cottage near Spirit Lake above mentioned shall be conveyed together with the contents thereof to the aforesaid Corporation.

"*It is further stipulated and agreed that whereas the parties are the owners of all the capital stock in the corporation known as the C. W. Parker Co., Inc., the outstanding capital stock of which is thirty shares shall be divided between the parties hereto, fifteen shares to each and the present stock shall be retired and new certificates to carry out this agreement issued and it is further provided that the President, Carlos Winslow Parker, shall remain president of said corporation and the plaintiff shall remain Secretary and they shall each continue in their respective offices so long as they are holders of stock or until contrary agreement is entered into, the plaintiff to have as a salary $228.00 per month and defendant to receive a salary of $308.00 per month and in the event the affairs of the corporation are prosperous so as in the opinion of each to warrant it, the defendant shall be entitled to the first increase of salary that shall be made in either of said offices.*

"*It is further provided in reference to the stock in said corporation that the new shares when issued shall be issued one half to each and the shares issued to plaintiff shall have a clause therein:* 'Carlos W. Parker has the option to purchase this stock if offered for sale at the highest price bid therefor by any other party' *and all stock issued to defendant shall have the following clause* 'Georgie Berenice Parker has the option to purchase this stock if offered for sale at the highest price bid therefor by any other party.'

"It is further provided that the back salary due up to June 1930 to plaintiff from the Company, shall be divided equally between the parties hereto."

The application of the defendant was directed to the foregoing part of the decree as pertaining to alimony. This application was filed in April, 1931, seven months after the entry of the decree. It was stated with much elaboration in six counts.

The principal grounds of the application are summarized in the defendant's brief as follows:

"1.   That said decree was void on its face.

"2.   That the court had no jurisdiction over property matters disposed of in said decree.

"3.   That there was a change of conditions in the status of the parties sufficient to justify modification of said decree.

"4.   That no adequate provision was made in the decree for support of the children.

"5.   That decree was not the decree that parties intended.

"6.   Mutual mistake of parties as to ownership of stock and as to their right by divorce decree to fix certain policies of a corporation.

"7.   Impossibility of carrying out the terms of the decree.

"8.   That decree was inequitable and unconscionable and contrary to good equitable practice.

"9.   That decree was void because of uncertainty as to what part of income that might be received by plaintiff was intended as alimony and what part was intended as support money for the children, if either, and what part might be a mere property division."

The foregoing summary may be further summarized as follows:

1.   That the alimony provisions were void because they purported to impose obligations upon a corporation, which was not a party to the case.

2.   That the stipulation of the parties which was incorporated in the decree was improvident and unworkable, and that it failed to express the real intent of the parties and was entered into through mutual mistake.

3.   That there had been such a change in the condition of the parties since the decree was entered as to require a revision of the alimony provisions.

The trial court held in form that there had been no change in the condition of the parties and that the defendant was entitled to no relief on that ground.   Nevertheless it did modify the decree by striking out that portion thereof which we have indicated in italics in the foregoing quotation therefrom.   That part of the decree and stipulation which recited the ownership

of thirty shares of stock in the corporation, and the awarding of fifteen shares thereof to the plaintiff, was modified so as to award only fourteen and one-half shares to the plaintiff. This was done on the purported ground that the parties owned but twenty-nine shares, and that the recital to the contrary was a mutual mistake. The other portion of the decree which is indicated herein in italics was stricken on the ground that it was void for want of jurisdiction over the corporation referred to. We consider first whether the first modification, predicated upon the ground of mutual mistake, was justified by the record.

I. The corporation under consideration was C. W. Parker Company, Inc. Its entire issue of stock consisted of thirty shares of the par value of $25.00 each. This corporation had been doing business for several years and was originated by the defendant herein. It was a successful going concern. At the time of the decree of divorce the defendant held in his own name twenty-eight shares of the capital stock and the plaintiff held two shares thereof. He was the president and general manager; she was the secretary. Salaries of $308.00 and $228.00 per month were attached to these offices. The business of the corporation was carried on by these two officers. The business consisted of the manufacture and sale of furniture polish. The so-called gross profits of the business amounted to more than $40,000 a year. The shares of this corporation constituted substantially all of the property of these parties, and their only prospective source of income. F. A. Parker, the father of the defendant, had been previously connected with the business and he was nominally its vice president. He was eighty-one years of age, and had ceased all active connection with the company while he was yet the owner of one share of stock. Prior to the decree of divorce he had assigned this share of stock to his son, the defendant, in blank, with authority to the son to insert his own name in the blank space. He delivered such share, so endorsed, to his son, who inserted his own name in the blank space. He also held the note of the corporation for $5,335.00. This note was also, at the same time, assigned and delivered to the defendant. At the time of such assignment and delivery by the father, he received from the corporation an agreement to pay him an annuity of $150 per month while he remained single and $200.00 a month if he should marry. He has been drawing such

annuity from the corporation ever since. The evidence of both father and son shows that the intent of the assignments by the father was to transfer the instruments to the son. There was no oher consideration for the annuity contract than such transfer to the son. The defendant testified as follows:

"The note for $5,335.35 is the note of the corporation given to F. A. Parker. It has been assigned in blank to me also. It is in my possession at the present time. It is in the vault box where it has been all the time. It is in my possession. It should be when it is assigned without recourse to me. Q. In other words, it is your note now, assigned without recourse to you? A. I don't know as I would give it up without a little— Q. It is your property? A. Yes. Q. If it is your property the corporation owes it to you, they don't owe it to Mr. Parker, your father, does it? A. No, it doesn't."

Again:

"Q. Nothing about this share of stock that ostensibly is in the name of F. A. Parker you didn't know about at the time this stipulation was signed up? A. Ask me that again. Q. You knew the situation in regard to this share of stock? A. Yes, sir. I expect I took too much for granted; my father has done so much for me that I presume I took for granted the business was mine. This share of stock has been in my safety deposit box about a year. Q. So you knew the situation in regard to that share when this stipulation was drawn up? A. I should have considered that, yes, but I didn't. I have two deposit boxes. This share of stock is in my personal box. The other box is for the corporation. The decree of divorce was September 4th. I was married September 16th.

Redirect Examination.

"I believe the assignment of the share of stock was made in Mr. Bowers' office. It was understood it was to be father's property. There was no consideration for the transfer. It was done ten months before father's marriage with the intention that on his death it was to become my property. I placed it in the company box, and after the divorce decree, it was changed to my personal box. I believe the envelope in which it was placed also contained father's will. He is still an officer of the

company. I wouldn't say positively, but I think the envelope was sealed. The note was for about $1,000.00 money advanced and services rendered. I paid nothing for the note. The object in assigning the note to me was the same as the share of stock. It was given so the corporation wouldn't be embarrassed if he suddenly passed away. I think it was Mr. Bowers' suggestion that the whole thing was done.''

In the face of the foregoing details of fact, the defendant also testified as a mere conclusion that the share of stock belonged to his father. The father testified as follows:

''I owned that share at the time of divorce. I assigned that share in Mr. Bowers' office. The reason was that Carlos—Mr. Bowers thought I might drop out and some widow grab that share of stock. Mr. Bowers suggested that I put my name on that stock, then if anything did happen it would become Carlos', as I intended at my death that all of my interest should go to him. I continued as vice-president. The note for something over $5,000.00 was given to balance my account. I signed over the stock, then the note came up. Mr. Bowers made out the note and said, 'If you get married, and should suddenly get killed, wouldn't it be a good idea if you also signed the note over?' The note was then signed over. I have a contract with the company, $150.00 per month until I married, then $200.00 a month. I was married ten months ago. I claim $1,100.00 is still due me on the salary contract. $400.00 was paid within the past week.'' * * *

''When I drew up this assignment of the note and share of stock, I was contemplating matrimony. I did not make any objection to Carlos' drawing out in excess of the amount allowed in the decree. He was president and I thought he knew his own business. I didn't look into his account, but I knew she didn't have any right to draw a dollar. He had, but she didn't have.''

The foregoing is a sufficient indication of the absence of any mutual mistake in the making of the stipulation. At the time of entering into the stipulation, the defendant knew every fact that he knows now. He asserted in the stipulation, and also to his wife, that he was the owner of all the shares of stock except the two shares then held by his wife. The present claim

that he did not own this particular share is a manifest after-thought, and is maintained for the manifest purpose of acquiring the controlling interest in the capital stock by reducing the interest of the wife to something less than fifteen shares. Indeed the defendant urged, as a witness, that the stipulation was unworkable because it would result in deadlock. As a witness also, he insisted that his wife as secretary was receiving more than the secretarial work was worth; and that he could hire the work done for $50.00 per month. His testimony indicates a clear purpose on his part to dispense with the service and salary of the wife, if he can obtain control of the corporation. The effect of the decree, as entered, was to require the delivery to the wife of thirteen shares of stock in addition to the two shares she already possessed. Sufficient to say at this point that it was no mistake on the part of the defendant at that time, and that he acted knowingly concerning every material fact pertaining to the ownership of said share. He should not be permitted to create a mere trap whereby his wife was induced to sign the stipulation for the purpose of the decree and thereafter to change front and to withdraw from her the very thing which induced her signature. Manifestly we can not adjudicate, as between the defendant and his father, because his father is not a party hereto. We do hold that, regardless of that issue, the plaintiff is entitled to fifteen shares of the stock. If it were material, we would have to hold also upon this record, and as between the parties hereto, that the defendant is the owner of the other fifteen shares.

II. Was the court justified in striking from the decree the certain provisions purporting to impose obligations upon the corporation? This was done solely on the ground that these provisions were void; void because the corporation was not a party to the litigation and could not be bound thereby. It is manifestly true that the decree was not effective to impose burdens upon any legal entity, as such, which was not a party to the suit. That, however, did not render the terms of the decree void as between the parties thereto. The court had jurisdiction of the parties before it, and likewise jurisdiction of their property. Such property comprised the entire stock issue of this corporation. Such corporate stock was within the jurisdiction of the court. And this is so even though the corporation, as such, was not within the jurisdiction of the court. As between

the parties the decree was valid, whether provident or improvident. It operated *in personam* upon the parties to the suit. The decree as it was, was capable of an interpretation that would confine its coercions to the plaintiff and to the defendant, as the holders of the corporate stock. The provisions which purported to impose obligations upon the corporation were enforceable in a practical sense not against the corporation, as such, but against the stockholders. The practical effect of imposing a purported obligation upon the corporation, solely owned by the parties to the decree, was to divide the burden of such obligation between the parties to the decree. The power of the court of equity is adequate to such an enforcement. The provisions of the decree are adequate as an indication of the amount of alimony or support to be received by the wife out of the community property. If the provisions of the decree as they are, should be obediently followed by the parties to the decree, it would solve the problem of alimony as determined by the decree. It may be true that a situation could arise where the rights of the corporation, as such, could be asserted in a way to reject or repudiate the burdens specified in the decree. A situation might be thus created which could be said to work a change in the condition of the parties and to authorize the court to make new and different provisions on the subject of alimony. No such condition has arisen yet. The complainant in this case is not the corporation. The jurisdiction of the court over the corporation was no better for the purpose of the amending order than it was for the purpose of the original decree. There was no jurisdiction over the corporation, as such, in the first instance; and none in the second. The amending order added nothing to the rights of the corporation. It only took away the substantial rights of the plaintiff under the decree. It purported to be made for the protection of the corporation, which was not a party. It actually operated only to the inequitable benefit of the defendant. We hold therefore at this point only that the decree, though ineffective as to any party beyond its jurisdiction, was not void as between the parties to the suit or as to the property owned by each or both of them. Neither party therefore was entitled to an elimination of any part of the decree as between each other.

III. We have gone through the record with much care in search of grounds of grievance which the defendant may have

in the conduct of plaintiff. As a witness, he complained that her salary was excessive and that her work could be hired at $50.00 a month. He knew that when he signed the stipulation.

He complains because she has overdrawn her account against the corporation. Her account is overdrawn to the amount of $1,350. A large part of this was concededly done with the express consent of the defendant. Side by side with that is the fact that he has overdrawn his account to the amount of $1,600. Each overdraft account resulted from emergencies, which were known and acquiesced in by each party. The treasury has not been wholly depleted thereby, and the bills receivable still exceed substantially the bills payable.

The defendant expresses his apprehension that the use of her voting power to the extent of one-half the stock issue will result in a deadlock between the two respective owners. That possibility was not only well-known when the decree was entered, but was accepted by both parties as inevitable. No deadlock has occurred as yet. No obstruction has been interposed to the defendant's management. None is threatened. On the other hand, the attitude of the defendant would threaten the rights of the plaintiff under the decree. This apprehension by the defendant is founded solely upon his fears, *quia timet*.

The decree of divorce was entered in September, 1930. Two weeks later, the defendant was married anew. A few weeks still later, the plaintiff was married. And a few weeks still later, the father of the defendant was married, thereby raising his pension or annuity to $200 per month. This proceeding was brought in April, 1931. In the meantime nothing had happened in the way of controversy between the parties, nor had the defendant encountered any obstruction of any kind emanating from the conduct of the plaintiff. The apprehensions of the defendant seem to arise out of the fact that the earning capacity of his corporation may be overtaxed. The little corporate boat, as a result of three successive weddings, is carrying a threefold cargo, as compared with the one which it carried prior to the decree of divorce. But he can not be permitted to save his own salary by cutting off that of the plaintiff. The boat may sink, and this may afford ground for later revision of the decree, but no such ground exists now.

The decree must be permitted to stand as entered originally, and the order appealed from is accordingly—Reversed.

WAGNER, C. J., and KINDIG, MORLING, and GRIMM, JJ., concur.

DE GRAFF, J., dissents.